REQUESTED BY: Ross Druliner, Dundy County Attorney, Benkelman, Nebraska.
1. May a County Hospital Board independently invest surplus hospital funds, or must such funds be invested by the County Treasure.
2. In the case of a County Hospital Building and Equipment Fund which has been established by the County Treasurer pursuant to a County Board resolution, one of the provisions of such resolution being, `to credit all interest accruing from said investments' to the hospital fund, should the interest from the investment of such funds be credited to the account of the hospital or should it go to the general fund of the county?
3. Is an enabling resolution of the County Board necessary in order to authorize the County Treasurer to release or transfer back to the hospital from time to time surplus funds being held in the custody of the Treasurer in a County Hospital Building and Equipment Fund?
4. May surplus funds now held by the County Treasurer in the County Hospital Building and Equipment Fund be transferred back to the hospital operating account or otherwise diverted to non-capital expenditures such as ordinary hospital operating costs.
1. By the County Treasurer.
2. Since the 1974 amendment to section 77-2315, the disposition of such interest is determined by the County Board.
3. A resolution would be appropriate. However, no particular form of action is required by statute; and any official County Board action evincing such intention should suffice.
4. No.
1.
Section 77-2315, R.S.Supp., 1976, provides for the investment by the County Treasurer, `by and with the consent of the county board,' of funds in the custody of the Treasurer. There appears to be no special statutory provision relative to the investment of county hospital funds; nor do we find anything in the statutes which would either require or justify the investment of surplus county hospital funds in any manner other than pursuant to section 77-2315. Accordingly, it is our opinion that a County Hospital Board may not invest surplus hospital funds separately in the name of the hospital and independently of the County Treasurer.
2.
Section 77-2315 also governs the disposition of interest derived from invested surplus hospital funds held in the custody of the County Treasurer. Historically, the statutes have provided that interest derived from invested funds (with exceptions not pertinent here) shall accrue to the general fund of the county. However, in 1974, section 77-2315 was amended so as to add a provisions to the effect that the County Board, in its discretion, could make provision for the maintenance of separate identity for invested funds and permit the interest thereon to be credited `to the fund from which the investment shall have been made.'
It appears that the Dundy County Hospital Building and Equipment Fund originally was established by virtue of a December 18, 1972 resolution of the County Board, one of the express provisions of which was `to credit a interest accruing from said investments' to the hospital fund. At the time of that resolution there was no statutory authority for the County Board to exercise any discretion with respect to the crediting of interest on investments; and, under the law at that time, it was mandatory that interest be credited to the general fund. Accordingly, notwithstanding the unmistakable intent of the County Board, we are inclined to believe that the resolution probably was ineffectual as to interest accruing prior to the 1974 amendment. However, as to subsequent interest we believe the resolution properly may be given effect as constituting a discretionary determination by the County Board, within the meaning of the sec. 77-2315 amendment, that the interest be credited to the hospital fund. Out of an abundance of caution, consideration might be given to the advisability of the County Board now taking some further action reaffirmatory of that intention.
3.
The statutes are silent as to any particular procedure for the withdrawal of surplus hospital funds in the custody of the County Treasurer. As a general proposition, County Boards are free to conduct their affairs with whatever reasonable procedural formalities they may deem fitting. In the specific case here under consideration, where the Dundy County Hospital Building and Equipment Fund originally was established pursuant to a County Board resolution, it seems not unreasonable that the same formality be observed whenever such funds are being drawn upon or otherwise transferred back to the hospital. In this connection, we have examined the resolution of the Dundy County Board, dated July 19, 1976; and it appears to be entirely proper and appropriate for such a purpose. As an alternative to a resolution, conceivably the process might be simplified by employing the somewhat more informal claim filing procedure.
4.
As to whether funds held by the County Treasurer in a County Hospital Building and Equipment Fund may be diverted to other uses, such as operating costs again there is nothing explicit in the statutes. The general powers of a County Hospital Board are enunciated in section 23-243.03, R.R.S. 194 Hospital boards are given quite broad independent control over the government of the hospital facilities and the expenditure of funds collected to the credit of the hospital. However, the fact remains that notwithstanding its considerable degree of autonomy, county hospitals are an integral part of county government and they are not separate or independent political subdivisions.
There being no statutory provision indicating any legislative intent to the contrary, it is our opinion that once surplus hospital income deposited into a special fund committed to the purpose of future building and equipment, such funds remain impressed with that obligatory identity and may not be diverted to some other use such as operating expenses. The conclusion, we realize, could produce an anomalous situation that a tax levy for maintenance and operation may be required even though the hospital has `money in the bank' which if used for that purpose would avoid the necessity for a tax levy. This is a situation which easily could be remedied by simple legislation; but it is not a matter within our province to resolve by reading into the statutes authority which presently does not seem to exist.